December 19, 1616 CPI Card Group v. Multi Packaging Solutions Mr. Flaherty Thank you, Your Honor, and may it please the Court. CPI seeks reversal of the Board's obviousness decision on Claims 1 and 18 because there was a fundamental disconnection between the claim language and the analysis that the Board undertook. The clearest instance of that disconnect is where the Board, in its final written decision, effectively substituted the use of selectively found in the prior art and inserted that into Step 5 of Claim 1 and 18. But didn't the Board actually in one sentence or a sentence separated by a semicolon use the word selectively and only together? They used them in adjacency, Your Honor, and they did use a semicolon, but in fact they almost wrote it and the Board used the phrase that is so that they said selectively that is only in a region. Right. So they defined selectively to use your word only. So I don't understand why you're saying they ignored the word only. Well, they didn't give it any legal weight. What they did is they found selectively in the prior art and they effectively read that in to Step 5. So they used the word only to engraft the prior art into it. And so at that point, its obviousness analysis was almost a fait accompli. Counsel, aside from the particular word used, and I don't mean to demean your argument, but how can it be non-obvious when you've got, when you're securing credit card between two boards and that's part of the prior art, including sealing it. And so the distinction here is avoiding sealing the actual credit card. I mean, what is non-obvious about that? Well, the claim language, Your Honor, respectfully, is a little more precise than that. So it's not simply enclosing the card inside a package and sealing around it. The steps have to be read in order to create the claimed secure card space at the end of Step 5. So part of it is enclosing the card, but enclosing the card alone, of course, doesn't practice the claimed steps. Are you saying that the prior art doesn't get you to a secured card space? Some of the prior art discloses space that could be called secure. Other prior art discloses space that wouldn't be secure. My argument is not exactly what Your Honor just said. It's more nuanced. It's that the particular secured space required by the independent claims of this patent is only made by following these steps in this order. And the fact that some art may have a different secured space, for instance, a blister pack could be considered a secured space. That would be not the secured space claimed by Claims 1 and 18. What if we ever said that you have to follow everything in a precise order, that unless you find every precise order in the prior art, that it can't be obvious? Oh, maybe I misspoke, Your Honor. When I talk about the order, I'm talking about the order of steps in this claim rather than the order disclosed in the prior art. So what I'm saying is, and I hope this is responsive, is that the prior art discloses many spaces, some of which could be considered secure, some of which could not be considered secure. But the claim language of the independent claims in this patent is far narrower. And goes to, its narrowness is not only found in Step 5. Of course, that limitation is the one under discussion. But its narrowness is reflected in performing all five claim steps in the order recited in the patent. I want to address, though, I think the panel's focus is exactly right, and clearly has understood CPI's argument here, is that once, obvious this was a fait accompli, once the board holds that selectively and only fundamentally mean the same thing. This would be a very, this would be a more different appeal than it is if the board had said the following, which it didn't. If the board had said, we're not sure about the meaning of the word only or the phrase only in the region substantially surrounding and offset from the card. And therefore, we're going to construe that term or that phrase and engage in a claim construction analysis. That would be very different and nothing like that occurred here. What the problem is, the board did from the outset, what MPS asked it to do in the initial petition, to treat the particular claim language as something more general that was in the prior art. And once you do that, the obvious disanalysis flows from it almost automatically. So the disconnect was there at the beginning. Well, is there any example in the prior art where the adhesion went right on the card that was supposed to be in the package? Yes, so in fact, Willard encourages that because Willard uses secure in two different senses. And when Willard is teaching its own invention, Willard discusses the advantage of adhering on the card to the package. And one of the embodiments in Willard that uses that is when the card swings open for exposed. You don't want to be exposed. You don't want the card falling out. So there are instances of prior art in this record where you do want. But even in Willard, that's not the heat sealing portion of what Willard's talking about, right? Well, Willard says you can use the heat sealing or you can use tape, or I think the phrase is any method known in the art. So the ability and even the desirability of having adhesives on the card is known. Now there are other references that I think Your Honor is alluding to where there are times where you don't want. Yeah, your expert said there'd be thousands of examples out there. Yeah, absolutely. I agree with that, Your Honor. And so I think that's why it's so important to be faithful to the precise claim language instead of treating it at a higher level of generality to say that, well, you know, we've enclosed a card in a package and put a bond around it, and that's all that's claimed. That's, I think, a gross oversimplification of the claims. But it is illustrative of how the Board got to its obviousness findings. Selectively is broad, and that word can mean different things. You didn't ask for a claim construction of the word only, did you? That is correct. I think such a construction would have been inappropriate, and neither party asked for that construction. And the Board didn't purport to give an instruction, although I think what's under discussion here today is whether there was some backdoor construction made that the Board didn't acknowledge it was doing and that neither party requested. I mean, to some extent, that feels what's going on. That a construction, if the Board wanted to engage in the analysis it performed, it probably had an obligation to do a construction. Now, that's not the error we've assigned to it here because both parties agreed a construction was unnecessary, and that's our position today. The problem was not doing construction, but the problem was, in substance, deviating from the language of the claim, going to the word selectively, which is in the prior and is much broader than the word only as used in the claim. Selectively, at least as disclosed in MAC, doesn't refer solely to geography about where on the panel. You apply it, but also temporally, when you create a bond. And in other instances, you can imagine that selectively might go to who or why a bond would be formed. So, once you map on this broad term... Yeah, I mean, they only looked at the part of MAC that said, you do the heat sealing where you want to do the bonding. I mean, why is that not logical? That phrase in isolation, I'm not going to say is illogical. In fact, it's almost tautological. Right, Rhonda said, for a heat-activated adhesive, a person will apply heat where they want the bond. I would submit that's a tautology when we're talking about creating a bond. The missing link there, though, in the board's analysis was the desire. Why does one of skill in the art desire to create the bond exactly where step five asserts, right? So, there, if you want to talk about desirability instead of selectivity, the problem with the analysis is the same, although those two words are different. So, again, selectively and desirably and where a bond is desired, those are not the same. But the key is that they're different than the word only in step five. So, if there were some reference in the art that the board had relied on to say, here's the reason it's desirable for one of skill in the art to only put the bond where step five of claim one requires. A reference like that might supply the missing link, so to speak, in what would be needed to sustain the board's analysis. Counsel, this application was rejected five times, right? It was, Your Honor, and I think... What overcame the fifth rejection? The word only? Well, no, the word only was not added prior to the final rejection. It was added two or three times earlier. So, and while the word only was discussed by the applicant, the examiner, in the context we're discussing here with the board's decision, only was not looked through the lens of selectively or where desired, the way we're looking through it from the board. So, I think the prosecution history doesn't do a great job of illustrating the distinction between only and selectively, because selectively wasn't used that way in prosecution, with one exception that I think it's important the court understand. In Willard, paragraph five refers to a secured space by applying adhesive around a space in the card, and it cites to figure four. Figure four from Willard, discussed in paragraph five, is copied verbatim from the Hansen reference, which was discussed extensively by the examiner. So, you can compare figure four from Willard with Hansen, which is at appendix 1258, and you will see that that same figure from Willard, where the board cites, was lifted verbatim from the Hansen reference, which was discussed extensively in prosecution before and after the word only was added to the claims. Were any of these key references, Willard, Mack, and Jones, cited in the prosecution? I don't see them. During, at time of filing. During prosecution, your honor. At time of filing. At time of filing. No, your honor, not at the time of filing. With one, and I want to qualify my no answer, because the answer is no, but as it was explained to the board, large portions of the Willard reference are copied either verbatim or nearly verbatim from the Hansen reference, which was cited during prosecution. What about Jones? Jones, I don't believe was cited during prosecution. No, your honor. The prosecution, the two, the kind of lead references during prosecution, Hansen and Goad, were far more closely related to the claimed invention than Jones, which is a blister pack. So, Goad and Hansen both were in the card packaging space. And of course, the blister pack of Jones, while the board relied on it, is not about cards at all, and is about blister packs rather than two pieces of cardboard. So, to the point about prosecution, I think that the striking similarity between Willard and the Hansen reference in prosecution is somewhat useful. I think MPS was technically correct when it told the board that the three lead references, Willard, Mack, and Jones, were not cited during prosecution. I don't deny what my friend across the aisle said in the brief with respect to that point. But, I think it's important in telling that huge swaths of Willard were copied verbatim from Hansen, which was discussed extensively. While we're on Willard, I think, and Hansen to a lesser extent, the board and Willard, and both experts, but really the board and Willard, use sometimes the phrase secure in two different but very important, importantly different ways. Secure in the context of this art can mean at least two things. Willard discloses you secure a card to a panel with an adhesive so it doesn't fall off the panel. That's not unlike me putting a sticky note on the lectern here. In some sense, it is secured and it won't fall off. That use of the word secure is fundamentally different than how this patent claims a secure card package. In fact, the title of our patent is an ultra secure card package. Now, I acknowledge ultra secure doesn't appear in the claims, but secure as a fix means something different than secure as protect. And once a person does what the board did and kind of equivocate between selectively and only, and maybe selectively also means where desired, and so these three different words mean three of the same thing, then it's also easy, I think, to be insufficiently precise about secure as a fix and secure as protect a card from tampering or theft. And those senses of secure are not the same. And I think there may be some dispute about what Willard understood his own invention to be, but I think when it comes to claim one and 18 of the Smith patent, it's completely unambiguous that what's claimed is a secure space. After you get to the end of all five steps of the independent claims, it instructs a person of ordinary skill that what's being created is a secure space in that sense of security. So I think in substance, our chief complaint and the legal error the board made was being insufficiently faithful to the claim language. If only can mean selectively and then with respect to another piece of art, selectively might also be where desired, then in substance, the legal analysis is just cramming the prior art into the claim limitation. And at that point, as a legal matter, the obviousness decision is already over, so to speak. Do you want to save some rebuttal time? I will save the rest of my time for rebuttal unless the panel has any questions from you. Okay. Thank you. Mr. Rowland. Good morning. I'm going to address just a couple of comments of my colleague at his presentation to start. First of all, as regarding Willard and its discussion of adhesive, it never says to use heat sealing to attach the card. It never says what? To use heat sealing to attach the card to the panel. In fact, if it says anything about attaching the card to the panel, sticking it, it talks about using something like sticky tape. He said it. It also talks about using like releasable adhesive, like that little blob of stuff that you often use to peel a card off. You know what's striking? When you get to the point where you have to combine six references in order to make a case for obviousness, doesn't that raise some sort of inquiry as to I'm looking at claims 20 and 21 were rejected on six references in combination? Well, Your Honor, I think if you look at the claims and the claim structure, what you see is they simply collected elements and added them together in the dependent claim. So it's just a miscellaneous collection of various elements. And so this is an art. This is a simple art. It's making packages. It's not the art that is often going to be described in a comprehensive way in one particular reference. So we had to find the references that taught these disparate elements. And that's why for some of those dependent claims deep down in the chain, there's multiple references. For example, one of them talks about poking a hole through the package to hang it on a rack. Well, that's an obvious thing, but it may not be talked about in the same reference where you're talking about heat sealing, for example. So that's why. So but for claim one, you only needed three references. You only needed three references. And even then, mainly the secondary references were really just helping to elucidate the teachings in Willard so that it would be clear what to explain so that what Willard was talking about. It really just supplemented what Willard described. So really, you need the combination. You need a motivation to combine. Yes. You need a suggestion. And not all of those points seem to have been covered. The board had eight pages on motivation to combine. This was extensively discussed for all of the references. That was in addition to the discussion of the disclosures of the references themselves. So I think it was, Your Honor, covered. This has really not been a point that's been addressed. The issue here really is whether there was substantial evidence of this limitation that you heat seal around the edge of the packet, which the board had plenty of evidence in front of it. Willard, the prior art identified by the expert in terms of its common technique of heat, how its heat sealing was done commonly. The expert cited multiple supporting teachings for that. This was a well-known technique for applying heat sealing in packaging, in packaging where there's apertures. He explained that in packaging where there's blisters. It just was a very common technique. There were machines that did this, as he also explained. So what did the claims add over the prior art? Just the sealing, avoiding where the credit card is? The argument that was presented during prosecution, which was discussed earlier, was whether the paper board that was used for the panels, the cardboard, whether it was coded, that was what the examiner didn't have evidence of in front of him. So that was the argument that was made. And that was the limitation that was added to the claims that the paper board had some coating on it, some non-polymeric coating. And that was, you can hear that they were trying to distinguish around the prior art by putting the word non in it. And that was the limitation that was at issue. And so as a consequence, some of the petition focused on the obviousness of using this particular paper board that they claimed. That's not an issue on this appeal, but there was a substantial discussion of that in the record as well. Do you think there's a patently distinct difference between the word selectively and only? In this context, when we're talking about disclosures of sealing around the edge of a package, as was commonly done, the teaching of selectively really has only one conclusion. It's that, and this is why we pointed to Mack, you are selectively applying heat sealing where you want the seal. That's what's like, there's no other interpretation that's really provided here. There's no other explanation that's been put forward. It's the only conclusion, and it's the obvious conclusion, and the board didn't have to say it was the only, but they had to have substantial evidence for why it would have been obvious to do this where you're sealing around the edge. And there was plenty of art to teach like Mack. Well, the way to do that is to heat and apply pressure only where you want the sealing. That's what was in the art. That's why we pointed to Mack. And we pointed to Jones to support the obvious teaching from Willard that it was known to seal all around the package, that is seal around the edge. And as the expert for CPI testified, this was thousands of packages. It's more common than not to do this. So with respect to the claims that are left before us, there's only the three pieces of prior art at issue, right? That's correct, Ron. Yeah. That's correct. So the Jones and Mack and Willard. And that's it. And those teachings are fully supported, you know, explained by the board and how it reached its conclusion. It reached both conclusions. It reached the conclusion that sealing around the edge was obvious and only around the edge and not on top of the card. And they reached the obviousness conclusion that you apply heat and pressure only in that sealing region to do that. That was a known common technique. The appellant raised two other issues. I'm not sure if any further questions on that point. Two other issues on Aperture. They briefly discussed Aperture. The board had substantial evidence saying there was no substantial evidence, but the board had substantial evidence in front of it that the package had an Aperture and through which you could view machine-readable data. There really wasn't even any argument before the board about the machine-readable data limitations. Sole issue was whether it had an Aperture. And this argument that seems to be a claim construction argument that says an Aperture can't have a flap on it really would be inconsistent with the patent itself, the 889 patent itself, which teaches, when it's teaching the Aperture, it actually teaches a third panel that can come over and cover the Aperture. That's at column 7 in the 7, column 7 lines 12, I think through 20, teaches covering the Aperture with this third panel. Explicitly says that. So this argument that, well, an Aperture can't have a cover on it is inconsistent with, as a matter of claim construction, if they were going there, would be inconsistent with the 889 specifications. And with respect to the final issue, I think, again, there was substantial evidence for the board, the board discussed the obviousness of using a filament. It's the same, it would be used for the same purpose as it was used in the similar type packages, Federal Express packages, they're flat sealed packages. You want to open them, you add a filament to make it easier to do it. That was just an obvious use of the same known, known technique in the same way. Thank you. Your Honor, first, I want to address the claim my friend across the aisle made about Willard and the use of heat-based adhesives on the card. We respectfully disagree completely. At Appendix 1122, paragraph 26, Willard states that the cards are secured to the package by an adhesive that may be a hot melt. At PRF 34, it says other conventional mechanisms may be used to secure the card to the paneling. And of course, if we look to MAC for what conventional mechanisms are, it discusses pressure-sensitive adhesives, which describes permanently tacky at room temperature. The reason I bring up the pressure-sensitive adhesives is we have heat explicit in Willard, we have cold adhesives explicit in Willard, and we have cold adhesives explicit in MAC. So it's not correct to say that Willard didn't suggest the use of heat adhesives and or pressure adhesives on the card to secure it to the panel. Sealing around the edge, right? So the board discussed at length sealing around the edge of the package. And again, this is one more example of the board being a little imprecise in the claim language. The claim language requires sealing only around the perimeter of the card and doesn't refer to a ceiling around the edge of the package. And if those two are not the same, I see that my time is up and we would ask this court to reverse. Thank you. Thank you both. The case is taken under submission.